*715 BELL, Chief District Judge,
dissenting.
I concur with the majority that there is no good-faith exception for warrants obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510 et seq. However, I respectfully dissent from the majority’s conclusion that the district court did not err in suppressing the fruits of the wiretap.
Chief District Court Judge John G. Heyburn, II, issued the wiretap at issue in this matter and determined that the government had satisfied the necessity requirement of 18 U.S.C. § 2518(l)(c) by establishing that “normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ.” J.A. at 696. “Generally, a district court’s finding that the requirements of § 2518(l)(e) have been met are afforded ‘considerable discretion.’ ” United States v. Stewart, 306 F.3d 295, 304 (6th Cir.2002) (quoting United States v. Landmesser, 553 F.2d 17, 20 (6th Cir.1977)). See also United States v. Corvado, 227 F.3d 528, 539 (6th Cir.2000) (“In reviewing the validity of an electronic surveillance order, we will accord ‘great deference’ to the determinations of the issuing judge.”). However, I believe the district court did not give the issuing judge the deference he was due based upon the reviewing judge’s determination that “the Wenther Affidavit’s misleading characterization of its use of physical surveillance requires that the Court analyze the necessity determination anew.” J.A. at 377.
The district court found the following statement to be misleading: “Physical surveillance of the subjects of this investigation has been conducted and is presently being conducted with only limited success. Physical surveillance has identified locations and vehicles utilized by members of this organization.” Wenther Aff. ¶ 36. The district court found that this statement “would cause a reasonable judge reading the affidavit to believe that the agents had performed surveillance on Mr. Rice to no avail.” J.A. at 376-77. The district court noted that this was not true because Agent Wenther acknowledged at the hearing on June 20, 2005, that no surveillance had been conducted on Mr. Rice. J.A. at 377. On reconsideration the district court stated that it assumed that “Agent Wenther did not deliberately attempt to mislead the issuing judge; however, in light of the importance of the statement in question his mistake was reckless.” J.A. at 442.
The sufficiency of a previously issued and executed wiretap warrant is analyzed under the procedure outlined in Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Stewart, 306 F.3d at 304-06. Under Franks, if a defendant shows that the affiant included a false statement in the warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, the false material must be set aside and the affidavit must be reviewed for sufficiency on the basis of the remaining content. 438 U.S. at 155-56, 98 S.Ct. 2674.
In its June 23, 2004, wiretap application, the government advised the court that it was investigating nineteen target subjects concerning a conspiracy to distribute controlled substances. J.A. at 603. The Wenther affidavit did not state that physical surveillance had been conducted on each and every one of those nineteen subjects. Neither did it state that physical surveillance had been specifically conducted on Rice. Accordingly, the statement that “[physical surveillance of the subjects of this investigation has been conducted and is presently being conducted with only limited success,” is not false.
*716 There is not even evidence in the record to support a finding that the statement was misleading. The twenty-six page affidavit contains numerous references to facts pertaining to unspecified members of the drug distribution organization and other references to facts pertaining specifically to Rice. Every time the affidavit discusses facts specific to Rice it names Rice and places his name in capital letters. The statements regarding physical surveillance do not mention Rice. There is nothing in this record to indicate that the issuing judge was misled about the nature of the surveillance conducted on Rice.
Furthermore, the district court did not find that Wenther intended to deliberately mislead the issuing judge. Instead, the district court found that the statements concerning physical surveillance were objectively misleading and that Wenther’s mistake was reckless. “Allegations of negligence or innocent mistake are insufficient” to show the deliberate falsity or reckless disregard that will justify impeaching the affidavit. Franks, 438 U.S. at 171, 98 S.Ct. 2674. “[I]f the warrant affiant had no reason to believe the information was false, there was no violation of the Fourth Amendment.” Id at 172 n. 8, 98 S.Ct. 2674. See also United States v. Charles, 138 F.3d 257, 263-64 (6th Cir.1998) (upholding district court’s decision not to set aside statements in affidavit for poor draftsmanship or unintentional errors).
Based upon the record before him, the most the district court could properly find was that the statements regarding physical surveillance on Rice were ambiguous, or that they were negligently made. Franks made it clear that a negligent misstatement in the underlying affidavit would not provide a sufficient basis for attacking a search warrant. 438 U.S. at 171, 98 S.Ct. 2674. Because there is no evidence that any statements in the affidavit were deliberately false or were made with reckless disregard for the truth, the district court’s decision not to give deference to the issuing judge’s necessity determination was clearly erroneous.
Not only did this district court err in failing to give deference to the issuing judge’s necessity determination, it also erred in the manner in which it conducted its own review. The district court concluded that the Wenther affidavit failed to satisfy the necessity requirements because it lacked the specificity required to enable the issuing judge to perform his review. The district court further concluded that the affidavit demonstrated that the government used the wiretap as the first step in its investigation of Rice. J.A. at 380. These conclusions are the product of an unduly restrictive application of the law and several clearly erroneous factual determinations.
Federal law requires that a wiretap application include “a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.” 18 U.S.C. § 2518(l)(c). “This statutory ‘necessity requirement’ was designed to insure that ‘wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose the crime.’” Stewart, 306 F.3d at 304 (quoting United States v. Alfano, 838 F.2d 158, 163 (6th Cir.1988)). The burden of showing necessity is not a heavy one. “[T]he government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted.” Alfano, 838 F.2d at 163.
All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court *717 be informed of-the reasons for the investigators’ belief that such non-wiretap techniques have been or will likely be inadequate.
Id. at 163-64 (quoting United States v. Lambert, 771 F.2d 83, 91 (6th Cir.1985)). The necessity requirement is to be tested “in a practical and common sense fashion.” Landmesser, 553 F.2d at 19-20 (quoting S.Rep. No. 1097, 1968 U.S.C.C.A.N., p. 2190).
The district court acknowledged that the affidavit contained an explicit assertion that Rice and Bullitt were associated with each other in the drug trade and that this association was corroborated by the conversation between Rice and Bullitt recorded under the May wiretap order. J.A. at 362. Nevertheless, in its necessity analysis the district court refused to consider substantial information in the Wenther affidavit because the information was not directed specifically toward Rice.[1] This exacting evidentiary requirement is not consistent with the court’s obligation to test the necessity requirement “in a practical and common sense fashion.” Landmesser, 553 F.2d at 19-20. As a practical matter, facts about others in the organization may very well be relevant to establishing the necessity of a wiretap as to others in the organization, and may be some of the only evidence available on someone who is higher up in the organization. In Alfano we held that where the government had “indicated the steps it had taken with regard to other investigative targets, and the difficulties in placing an informant m or maintaining continual surveillance of those involved in far-flung operations” it had satisfied its obligation of showing both the “serious consideration” of other measures and the “reasons” for the belief in their inadequacy. 838 F.2d at 164. We accordingly reversed the district court’s suppression order. Id.
The district court’s refusal to credit evidence in the affidavit that related to drug conspiracies in general was also error. Although a “purely conclusory affidavit” unrelated to the specific case would be inadequate to comply with the statute, “the mere fact that the affidavit ... rested in part on statements that would be equally applicable to almost any [similar type of case] does not render the affidavit insufficient,” provided that there is also “information about particular facts of the case at hand which would indicate that wiretaps are not being ‘routinely employed as the initial step in criminal • investigation.’ ” Landmesser, 553 F.2d at 20 (citations omitted).
In support of its finding that the Wen-ther affidavit failed the necessity requirements, the district court noted that the pen register was “inherently limited in its usefulness” and the confidential source had not been able to meet with, introduce people to, or conduct controlled purchases from Rice. The fact that alternative investigative techniques had been attempted and had not been successful is precisely *718 the kind of evidence that the court should accept as support for the required showing that traditional techniques will not suffice to expose the crime. See Stewart, 306 F.3d at 304.
As explained in the Wenther affidavit, drug conspiracies are difficult to investigate because of their secrecy. The most definitive evidence the government was able to develop on Rice came through the wiretap of Bullitt’s telephone. We have previously recognized that “wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation.” Stewart, 306 F.3d at 305 (quoting Landmesser, 553 F.2d at 20). This was such a case.
In addition to taking too narrow a view as to the applicable law, the district court also refused to credit information that did relate specifically to Rice. For example, the district court found that there was no evidence of Rice’s dangerousness, when in fact there were allegations in the affidavit that Rice has prior drug and robbery arrests and convictions on narcotics charges dating from 1992 to 2003, that he has been listed as a subject in numerous local, state and federal investigations, and that he has a well-known reputation as being a violent, large-scale cocaine distributor who has successfully intimidated individuals through violence and/or the threat of violence. Wenther Aff. ¶¶ 8 & 10.
Finally, the district court erroneously found that the government used the wiretap application as the first step in its investigation of Mr. Rice. This conclusion was based in part on the district court’s finding that the government requested a wiretap “[wjithin ten days of the first hint of Mr. Rice’s involvement.” J.A. at 379. On June 13, 2004, the government intercepted a telephone call between Bullitt and Rice regarding a large cocaine shipment and on June 23, 2004, it applied for the wiretap on Rice’s telephone. However, contrary to the district court’s finding, the intercepted call was not the “first hint” of Rice’s involvement. The government had been gathering information about Rice since at least October 29, 2003, some eight months before the wiretap application for Rice’s telephone, when the Confidential Source provided information that Rice and Bullitt were associated with each other and involved in the trafficking of multi-kilogram quantities of cocaine. Wenther Aff. ¶ 7(d). Rice was also named as a target subject in the May 26, 2004 application for the wiretap of Bullitt’s telephone.
Accordingly, I respectfully conclude this district judge erred by failing to give the issuing judge the deference he was due and in failing to test the necessity requirement in a practical and common sense fashion. The issuing judge did not abuse his considerable discretion when he found that the Wenther affidavit had demonstrated the required necessity for the wiretap of Rice’s telephone. I would therefore REVERSE the district court’s suppression order.